# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT WINCHESTER

| | |
|---|---|
| JAMIE CUNNINGHAM, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 4:24-CV-032-DCLC-SKL |
| ) | |
| BRIAN ELLER, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

In this action, Petitioner Jamie Cunningham, a state prisoner, challenges his first-degree murder conviction through a pro se petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 [Doc. 1] and a memorandum in support of that petition [Doc. 1-1]. In these filings, Petitioner asserts that he is entitled to relief under § 2254 because (1) his counsel had a conflict of interest due to his prior representation of and personal relationship with the victim; (2) the prosecution violated the *Napue v. Illinois*, 360 U.S. 264 (1959) and *Giglio v. United States*, 405 U.S. 150 (1972) line of cases by presenting false testimony from a witness in which the witness indicated that he had no agreement with the state in return for his testimony; and (3) Petitioner has new evidence that he did not state that he was going to kill his father on the day of the shooting [*Id.*]. In response to these filings, Respondent filed the state court record [Doc. 13], a motion to dismiss the petition [Doc. 15], and a memorandum in support of this motion [Doc. 16]. Petitioner did not file a response to this motion, and his time for doing so has passed. E.D. Tenn. L.R. 7.1(a).

After reviewing the parties' filings and the state court record as a whole, the Court finds that Petitioner is not entitled to relief under § 2254, and that no evidentiary hearing is warranted.

1

*See* Rules Governing § 2254 Cases, Rule 8(a); *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). For the reasons set forth below, Respondent's motion to dismiss [Doc. 15] will be **GRANTED**, and this action will be **DISMISSED WITH PREJUDICE.**

## I. BACKGROUND

After the jury convicted Petitioner of first-degree murder, he filed a direct appeal to the Tennessee Court of Criminal Appeals ("TCCA") asserting various grounds for relief [Doc. 11-8]. In its opinion, the TCCA summarized the evidence at trial as follows:

> It is undisputed that the defendant shot and killed his father on February 19, 1997. Approximately one week before the homicide, the defendant was arrested on charges of theft. An inmate testified that the morning before the homicide, the defendant told him that he was going to kill the "son of a bitch," referring to his father. Thereafter, the defendant was released on bond.
>
> The defendant's girlfriend testified that the morning before the murder, she told the defendant his father "tried something" with her while the defendant was in jail. She further testified that, on the night of the murder, she was sleeping with the defendant and awoke to see the defendant's father standing in the doorway looking at her. She then told the defendant that his father was "peeking through the blanket" covering the doorway. According to her testimony, the defendant sat up, smoked a cigarette, then retrieved his British Lee Infield bolt action rifle, went into the living room, and shot his father while his father was lying on the couch. She testified that there were several shots with five or six seconds between each shot.
>
> Thereafter, the defendant loaded the body in the trunk of his mother's car, took it to Monteagle, and dumped the body over a ravine in a remote area. Defendant also burned the couch and disposed of his father's clothing and the weapon. The defendant, his girlfriend and mother then left for Oklahoma.
>
> The victim's body was not discovered until March 23, 1997. The defendant was arrested in Oklahoma in April of 1997. On the return trip to Tennessee, the defendant told the Grundy County Sheriff, "I shot the son of bitch, I should have shot him twenty years ago for what he's done in the past and what he would do in the future." The defendant also informed the Sheriff that he had disposed of the weapon in a nearby lake. Subsequently, the weapon was located at the place the defendant had described.

> At trial, the defendant contended that he was provoked by the victim's actions toward his girlfriend. He testified that on the day of the murder, his girlfriend told him the victim "tried to rape" her. The defendant further testified that his girlfriend was pregnant with his child, and that she told him the victim threatened their unborn child if the girlfriend told anyone about the incident. The defendant also testified that when he bolted the gun, the victim tried to knock the gun out of his hand and the first shot missed, but he "kept shooting" until his mother tried to take the gun from him. Additionally, the defendant offered the testimony of a psychologist who testified that the defendant suffered from post traumatic stress disorder as a result of trauma experienced during the defendant's childhood.
>
> The defendant's theory at trial was that he was provoked; therefore, the homicide was, at most, voluntary manslaughter.

*State v. Cunningham*, No. M199901995CCAR3CD, 2000 WL 1520247, at *1–2 (Tenn. Crim. App. Oct. 13, 2000).

At Petitioner's trial, Jerry Layne testified that while he was awaiting his court hearing he was placed in a holding cell with Petitioner who was also waiting for his court hearing. He testified that he saw Petitioner's father in the audience and told Petitioner. In response, he testified that Petitioner then threatened to kill his father. This occurred the morning before the shooting. Layne testified in his direct examination that because he agreed to testify at Petitioner's trial, the prosecution agreed to (1) allow him to stay at the Marion County Jail, which was near his family, "pending [his] probation hearings" and (2) tell the parole board that he was cooperative in the prosecution of the Petitioner [Doc. 13-3, p. 16–17]. While Layne denied the prosecution had told him they were going to put a "good reference" for him before the parole board, [*Id.* at 24–25], he confirmed they were going to help him stay in Marion County Jail [*Id.* at 25]. On redirect examination, Jerry Layne agreed that he was unsure whether the prosecution contacting the parole board about his assistance in this trail would assist him or not [*Id.* at 27–28]. The TCCA affirmed

3

Case 4:24-cv-00032-DCLC-MJD   Document 17   Filed 02/21/25   Page 3 of 14
PageID #: 898

Petitioner's conviction on direct appeal, *see generally id.*, and the Tennessee Supreme Court ("TSC") denied review [Doc. 13-11].

Petitioner then filed a pro se petition asserting various claims for post-conviction relief [Doc. 13-12, p. 3–43], and his appointed counsel later filed an amended petition for post-conviction relief [*Id.* at 49–53]. The post-conviction court denied the petition [*Id.* at 78–79]. Petitioner appealed this denial to the TCCA, raising only the claim that his counsel was ineffective in negotiating a plea agreement for him [Doc. 13-14]. The TCCA affirmed the denial of the post-conviction petition, *Cunningham v. State*, No. M2017-00348-CCA-R3-PC, 2017 WL 5713037 (Tenn. Crim. App. Nov. 28, 2017), and the TSC denied review [Doc. 13-19].

While his post-conviction petition was pending, Petitioner also filed a petition for error coram nobis relief alleging that his counsel was ineffective in negotiating a plea agreement for him [Doc. 13-12 p. 56–62]. A number of years later, Petitioner filed an affidavit from Robert Layne, apparently in support of the error coram nobis petition [Doc. 13-20 p. 5]. In this affidavit, Robert Layne states that (1) he was in the cell with Jerry Layne and Petitioner during the time period relevant to Jerry Layne's testimony at Petitioner's trial that he heard Petitioner make a threat to kill the victim; (2) Robert Layne never heard Petitioner make any such threat; and (3) Robert Layne was awake and aware at the time of the alleged threat and would have heard any such threat due to the conditions of the cell [*Id.*]. Petitioner subsequently filed an amended error coram nobis petition alleging claims for relief based on (1) Robert Layne's affidavit and (2) a letter indicating that Jerry Layne and the state had an agreement under which Jerry Lane would serve his sentence close to his home in return for his testimony at Petitioner's trial [*Id.* at 12–13], as well as a traverse alleging that Petitioner's trial counsel had a conflict of interest during Petitioner's trial [*Id.* at 18]. Petitioner later filed two amended petitions for error coram nobis relief raising these same three

4

claims, which are the same claims he seeks to bring in his § 2254 petition [*Id.* at 23–29, 33–40; Doc. 1; Doc. 1-1]. While the state has filed a motion to dismiss Petitioner's error coram nobis petition on various grounds [Doc. 13-20 p. 42–43], the petition appears to still be pending [*See generally id.*].

## II. STANDARD OF REVIEW

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows a federal court to issue a writ of habeas corpus upon a determination that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Before a federal court may grant habeas corpus relief, the petitioner generally must have first exhausted his available state remedies by "fairly present[ing]" each federal claim to all levels of the state appellate system to ensure that states have a "full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) (citing *Justices v. Boston Mun. Court v. Lydon*, 466 U.S. 294, 302–03 (1984)). In Tennessee, presentation of a claim to the TCCA is sufficient. Tenn. S. Ct. R. 39.

However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Accordingly, the Supreme Court has expressly noted that district courts may choose to address the merits of habeas corpus claims even where it is unclear whether the petitioner has exhausted his state remedies, specifically citing as an example cases where the habeas claims are "easily resolvable against the habeas petitioner, whereas the procedural-bar issue involve[s] complicated issues of state law." *Lambrix v. Singletary,* 520 U.S. 518, 525 (1997).

5

Case 4:24-cv-00032-DCLC-MJD   Document 17   Filed 02/21/25   Page 5 of 14
PageID #: 900

## III. ANALYSIS

### A. Exhaustion

As set forth above, it is apparent from the state court record that (1) Petitioner still has a petition for a writ of error coram nobis pending in the state court and (2) in his pending state court error coram nobis petition, Petitioner has raised the same claims he raises in his § 2254 petition [Doc. 13-20 p. 5, 12–13, 18, 23–29, 33–40, 42–43; Doc. 1; Doc. 1-1].

Notably, in his memorandum in support of his motion to dismiss the petition, Respondent argues that Petitioner cannot obtain state court relief through his pending state court error coram nobis petition because this is not the correct avenue for Petitioner to have raised these claims [Doc. 16 p. 6–7]. Respondent therefore asserts that, as Petitioner did not exhaust his § 2254 claims in his post-conviction proceedings as he should have done, he procedurally defaulted those claims and has not shown cause or prejudice to overcome that default [*Id*. at 5–10]. While Petitioner has not responded in opposition to this assertion, the Court will not address whether Petitioner has procedurally defaulted his claims. Instead, the Court will address the merits of Petitioner's claims for § 2254 relief.

Specifically, under Tennessee law, "Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." Tenn. Code Ann. § 40-26-105(b). On the other hand, a Tennessee criminal defendant is entitled to post-conviction relief where his "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103.

6

Accordingly, for the Court to determine that Petitioner has improperly brought his error coram nobis claims in that petition, rather than in his post-conviction proceeding, such that he procedurally defaulted these claims, the Court would have to determine that (1) Petitioner was at fault for not presenting the evidence in support of these claims in his earlier state court proceedings; (2) the evidence on which Petitioner relies for these claims is not "subsequently or newly discovered evidence relating to matters which were litigated at the trial"; (3) the state court error coram nobis judge would not determine that the evidence on which Petitioner relies for his claims may have resulted in a different judgment, if it had been presented at the trial; and/or (4) that Petitioner should have brought these claims in his post-conviction petition, rather than in a petition for error coram nobis relief. And the Court would have to make these determinations (1) without any state court opinions addressing these factual and/or state law issues in this specific case and (2) while the subject error coram nobis petition is pending, in a manner that effectively would find merit to the state's pending motion to dismiss the error coram nobis petition.

The Court declines to engage in this sort of complicated analysis of Tennessee error coram nobis and post-conviction law, especially as the Court can easily resolve Petitioner's § 2254 claims against him. *Lambrix,* 520 U.S. at 525. Accordingly, the Court will now address each of Petitioner's claims on the merits.

**B.      Conflict of Interest**

Petitioner claims that his trial counsel had a conflict of interest that entitles him to relief under § 2254 because his trial counsel had represented the victim and had a personal relationship with the victim [Doc. 1-1 p. 4–6]. However, this claim is unpersuasive.

Specifically, while Petitioner appears to assert that he is entitled to a presumption of prejudice based on his allegations that his counsel represented the victim and had a personal

7

relationship with the victim, this argument is misplaced. Under *Cuyler v. Sullivan*, 446 U.S. 335 (1980), a district court presumes prejudice where the petitioner establishes that his lawyer "actively represented conflicting interests" and this "actual conflict of interest adversely affected his lawyer's performance." *Id.* at 345–50. However, the Supreme Court has confined this presumption of prejudice to multiple concurrent representation of criminal defendants. *Mickens v. Taylor*, 535 U.S. 162, 166–73 (2002). As Petitioner does not allege, nor does it appear to be possible, that Petitioner's trial counsel concurrently represented both (1) the victim and (2) Petitioner for his charges arising from him shooting and killing the victim, this presumption does not apply.

Thus, the Court must now determine whether Petitioner is entitled to relief under § 2254 because the alleged conflict of interest on the part of his trial counsel amounted to ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which the Sixth Circuit has found applies in all other conflict of interest cases. *Leonard v. Warden*, 846 F.3d 832, 844 (6th Cir. 2017) (citing *Stewart v. Wolfenbarger*, 468 F.3d 338, 350–351 (6th Cir. 2006)). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims for ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. A petitioner has the burden of proving that his counsel provided ineffective assistance. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A party asserting an ineffective-assistance-of-counsel claim must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires a claimant to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

The Supreme Court has emphasized that a claimant must establish both prongs of a claim for ineffective assistance of counsel to meet her burden, and if either prong is not satisfied, the claim must be rejected. *Strickland*, 466 U.S. at 69.

Petitioner has not established that his counsel performed deficiently due to the alleged conflict of interest, or that any deficiency prejudiced his defense. While Petitioner argues that his counsel should have attempted to introduce evidence of the victim's prior violent acts and/or character at trial and his sentencing but did not because of the conflict of interest [Doc. 1-1 p. 3], the record does not support this assertion. To the contrary, the record establishes that Petitioner's trial counsel repeatedly tried to introduce evidence of the victim's violent acts and/or character at trial, but the trial court ruled that he could not do so based on the applicable evidentiary rules [*See, e.g.*, Doc. 13-2, p. 9, 19–20; Doc. 13-4, p. 35; Doc. 13-5, p. 38–39], a ruling that the TCCA

9

affirmed. *State v. Cunningham*, 2000 WL 1520247, at *5–6. Moreover, as Respondent correctly asserts, Petitioner's trial counsel could not have presented evidence of the victim's violent acts and/or character to mitigate Petitioner's sentencing exposure, as Tennessee law required nothing less than a sentence of life imprisonment for Petitioner's first-degree murder conviction. Tenn. Code Ann. § 39-13-202(c) (1995).

Accordingly, the record does not support the Court finding that Petitioner's trial counsel performed deficiently in any way, or that any deficiency prejudiced Petitioner. As such, Petitioner's conflict of interest claim has no merit, and Petitioner is not entitled to relief under § 2254 for this claim.

### C. *Napue/Giglio* Claim

Petitioner also claims that he is entitled to § 2254 because the prosecution presented false evidence at his trial in violation of the *Napue/Giglio* line of cases [Doc. 1 p. 4; Doc. 1-1 p. 5–6; Doc. 1-2 p. 2]. Specifically, Petitioner asserts that the prosecution presented false evidence that Jerry Layne did not have an agreement with the prosecution in return for his testimony, but Petitioner now has discovered evidence that Jerry Layne testified with the understanding that he would remain incarcerated close to his family due to that testimony [*Id.*]. However, the record does not support the Court finding that Petitioner is entitled to § 2254 relief for this claim.

The Sixth Circuit has held that a false testimony claim under the *Napue/Giglio* line of cases requires Petitioner to show "(1) that the prosecution presented false testimony; (2) that the prosecution knew [the testimony] was false; and (3) that [the false testimony] was material." *Abdus-Samad v. Bell*, 420 F.3d 614, 626 (6th Cir. 2005) (citing *United States v. Hawkins*, 969 F.2d 169, 175 (6th Cir. 1992)). Under this standard, false testimony is material, and "[a] new trial is required[,] if the false testimony could in any reasonable likelihood have affected

the judgment of the jury." *Giglio,* 405 U.S. at 154 (alterations and internal quotation marks omitted) (quoting *Napue,* 360 U.S. at 271).

Nothing in the record suggests that the prosecution presented false testimony from Jerry Layne regarding the agreement that he would be incarcerated near his family in return for his testimony at Petitioner's trial. To the contrary, as set forth above, Jerry Layne consistently and repeatedly testified at Petitioner's trial, on both direct examination and cross examination, that he understood that he would be incarcerated near his family due to his testimony in Petitioner's case [Doc. 13-3 p. 16–17, 18–19]. And while Jerry Layne agreed on direct examination that the prosecution also would be contacting the parole board to assist him [*Id.* at 16–17] but then on cross examination testified that he was not aware that this would occur [*Id.* at 18–19], it was Petitioner's trial counsel who solicited Jerry Layne's testimony that he was unaware that he would receive assistance with regard to parole, not the prosecution [*Id.*]. Moreover, the record demonstrates that, on redirect, the prosecution then did its best to clarify for the record that while it planned to contact the parole board about Jerry Layne, that contact may or may not help him [*Id.* at 26–27]. Accordingly, the record (1) belies Petitioner's assertion that the prosecution presented false testimony from Jerry Layne regarding its agreement that this witness would remain incarcerated near his family and (2) demonstrates that any false testimony from Jerry Layne regarding his agreement with the prosecution could not have affected the jury's judgment against Petitioner, especially in light of the other overwhelming evidence of Petitioner's premeditation of the murder.

As such, this *Napue/Giglio* claim has no merit, and Petitioner is not entitled to relief under § 2254 for this claim.

D. **New Evidence**

Petitioner's last claim for § 2254 relief is that he has new evidence in the form of an

affidavit from Robert Layne in which Robert Layne claims that he was in the cell with Jerry Layne and Petitioner at the relevant time and did not hear Petitioner make any statement that he intended to kill the victim in the manner about which Jerry Layne testified at Petitioner's trial [Doc 1 p. 6; Doc. 1-1, p. 6–7; Doc. 13-20, p. 30]. But Petitioner does not explain how, nor does the record support the Court finding, that this new evidence renders Petitioner's first-degree murder conviction a violation of his constitutional rights that would entitle him to § 2254 relief.

As set forth above, at Petitioner's trial, Jerry Layne testified that the morning before Petitioner shot the victim, Petitioner told Jerry Layne that Petitioner was going to kill the "son of a bitch," i.e. the victim [Doc. 13-3 p. 18–19]. And notably, in his trial testimony, Petitioner admitted to threatening to kill his father in front of Jerry Layne on the Sunday before the shooting, although he denied making the exact statement that Jerry Layne attributed to him on the day of the shooting [Doc. 13-4 p. 23–24, 50–51].

Through Robert Layne's affidavit, Petitioner now seeks to introduce further evidence that he did not make the statement that he intended to kill the victim on the day of the shooting, presumably to bolster his own trial testimony. But he does not allege or set forth any evidence suggesting that the prosecution (1) deliberately presented false testimony from Jerry Layne regarding this threat or (2) knew of and failed to disclose any evidence from Robert Layne regarding Petitioner making this threat. Nor has Petitioner presented any reason that he could not have obtained this evidence from Robert Layne, whom Petitioner presumably knew was in the cell with Petitioner and Jerry Layne at the time that Jerry Layne alleged that Petitioner made this threat, prior to his trial, with the exercise of due diligence.

The Court further finds that Robert Layne's affidavit, even if presumed to be true on its face, does not call into question the jury's verdict that Petitioner is guilty of first-degree murder,

12

especially in light of the other overwhelming evidence of Petitioner's premeditation of the shooting of the victim. Instead, this affidavit only impeaches Jerry Layne's testimony regarding the timing of Petitioner's threat to murder his father, which Petitioner's own testimony already accomplished at trial. Thus, the Court sees no basis under which Petitioner's new impeachment evidence from Robert Layne warrants habeas corpus relief. *United States v. Carson*, 560 F.3d 566, 585 (6th Cir. 2009) ("Mere impeachment evidence . . . is not sufficient to warrant a new trial.") (citation omitted).

Accordingly, Petitioner has not shown that the affidavit from Robert Layne entitles him to relief under § 2254.

### IV. CONCLUSION

For the reasons set forth above, Respondent's motion to dismiss the petition for § 2254 relief [Doc. 15] will be **GRANTED**, and this action will be **DISMISSED with prejudice**.

The Court must now consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas corpus proceeding only if he is issued a COA, and a COA may issue only where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right and thus a COA should issue. *Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists could not conclude that Petitioner has made a substantial showing of a denial of a constitutional right with regard to any of his claims, such that they would be adequate to deserve further review. Accordingly, a **COA SHALL NOT ISSUE.** Also, the Court

13

**CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous.  Fed. R. App. P. 24.

      **AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

      **ENTER:**

                                      s/Clifton L. Corker
                                      United States District Judge